IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PJM INTERCONNECTION, LLC and PJM  :
SETTLEMENT, INC.,                                              :
                                                                                 :
      Plaintiffs,                                                  :
                                                                                 :
      v.                                                                  :  Case No.1:12-cv-01779-RGA
                                                                                 :
CITY POWER MARKETING, LLC,                        :
ENERGY ENDEAVORS, LLC, ENERGY       :
ENDEAVORS LP and CRANE ENERGY,      :
INC.,                                                                          :
                                                                                 :
      Defendants

---

## MEMORANDUM OPINION

Richard A. Barkasy, Esq., Fred W. Hoensch, Esq., SCHNADER HARRISON SEGAL & LEWIS LLP, Wilmington, DE.

    Attorney for Plaintiffs PJM Interconnection, LLC and PJM Settlement, Inc.

Theodore J. Tacconelli, Esq., Rick S. Miller, Esq., FERRY JOSEPH & PEARCE, P.A., Wilmington, DE.

    Attorneys for Defendants City Power Marketing, LLC, Energy Endeavors, LLC, Energy Endeavors, LP and Crane Energy, Inc.

April 12, 2013

ANDREWS, UNITED STATES DISTRICT JUDGE:

Plaintiffs PJM Interconnection, LLC and PJM Settlement, Inc. (collectively, "PJM") seek a ruling concerning this Court's jurisdiction to hear the breach of contract claim that PJM brings against City Power Marketing, LLC, Energy Endeavors, LLC, Energy Endeavors, LP, and Crane Energy, Inc. (collectively, "Defendants"). Asserting that its claim raises no federal question, and that this Court therefore lacks subject matter jurisdiction, PJM moves, pursuant to 28 U.S.C. § 1447(c), to remand the claim to state court.

## BACKGROUND

PJM, a Regional Transmission Organization ("RTO"), runs the electric transmission grid for a region encompassing thirteen states and the District of Columbia. (D.I.11 at 1). As an RTO, PJM operates under the authority of the Federal Energy Regulatory Commission ("FERC"). (*Id.*). PJM also administers a competitive wholesale electricity market in which over 800 members do business. (*Id.* at 1-2). Defendants are members of the market. (*Id.*). Relations between PJM and Defendants are governed by a FERC-approved transmission tariff (the "Tariff") and a contract filed with FERC (the "PJM Operating Agreement"). (*Id.* at 4-5).

In 2009, FERC issued orders directing PJM to refund certain payments to certain market members. (*Id.* at 7). Accordingly, PJM refunded approximately $23 million to Defendants from October 2009 to January 2010. (*Id.* at 8). However, FERC reversed its 2009 orders in July 2011. (*Id.*). Defendants and other market members have tried to stay PJM's collection of the refunds through filings with the U.S. Court of Appeals for the D.C. Circuit and FERC itself; both have been unsuccessful. (*Id.* at 9). However, petition for review of FERC's 2011 reversal of its 2009 orders is currently pending before the U.S. Court of Appeals for the D.C. Circuit. (*Id.* at 9). Oral

1

argument is apparently scheduled for April 2013. (D.I.17 at 5).

The PJM Operating Agreement requires market member signatories to provide payment for "all bills rendered in connection with or arising under or from this Agreement, any service or rate schedule, [or] any tariff . . . notwithstanding any disputed amount . . . ." (D.I.11-1 at 123). In July 2012, PJM billed Defendants for the refund amounts. (D.I.11 at 11). Defendants have not yet paid. (*Id.*). Plaintiffs filed a complaint in the Superior Court of the State of Delaware in and for New Castle County, alleging breach of contract.[1] The case was removed to federal court. (D.I.1). The Plaintiffs now seek to remand the case to Superior Court. (D.I.12).

## DISCUSSION

1. Standard for Motion to Remand

A defendant may remove to federal court "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The party seeking removal bears the burden of showing that federal jurisdiction exists. *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144 (3rd Cir. 2009). Due to federalism concerns, "the removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3rd Cir. 1990) (internal quotation marks omitted) (citation omitted).

2. Subject Matter Jurisdiction

Where, as here, the parties lack diversity, federal jurisdiction only exists if the cause of action is one "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §

---

[1] The complaint filed in Superior Court is at D.I.1-1, at 4-16. A page or two appears to be missing.

2

1331. This standard is supplemented by the well-pleaded complaint rule, which recognizes federal question jurisdiction only if a federal question is presented "on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). If the plaintiff brings only state law claims, despite the existence of federal claims and potential federal defenses, there is no federal question jurisdiction. *See Franchise Tax Bd. of the State of California v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 10 (1983).

The Supreme Court has long recognized that federal jurisdiction will lie over state claims that implicate significant federal issues. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). To determine which state claims fall into this category, courts ask whether the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. In other words, federal jurisdiction is proper if "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims . . . ." *Franchise Tax Bd.*, 463 U.S. at 13.

Here, PJM argues that its complaint states a "straightforward breach of contract claim." (D.I.13 at 4). Although it admits that the PJM Operating Agreement constitutes "a rate schedule to PJM's FERC-filed tariff," PJM points out that its complaint does not challenge the tariff rates themselves, just Defendants' failure to pay under the contract. (*Id.* at 8). Therefore, because the claim fails to "both implicate the tariff and challenge its terms," PJM argues, no federal question jurisdiction exists. (*Id.* at 7).

PJM cites to *Central Iowa Power Co-op. v. Midwest Independent Transmission System Operator, Inc.*, 561 F.3d 904 (8th Cir. 2009), in support of its position. (D.I.13 at 8). In that case,

3

a non-public utility brought state law claims against a system operator in similar circumstances. *Central Iowa Power*, 561 F.3d at 906. After the case was removed to federal court, the plaintiff filed a motion to remand. *Id.* The District Court denied the motion, concluding that the state law claims "necessarily depended" on the resolution of federal issues. *Id.* Specifically, the court noted that the state law claims required resolution of whether the operator violated the FERC-filed operating agreement and the FERC-approved transmission tariff, both of which had the force of federal law. *Id.* at 912, 915. The Eighth Circuit Court of Appeals reversed, reasoning that the state law claims did not require the utility to show that the agreement and tariff were violated "in such a way as to implicate the FERC-filed rates." *Id.* at 914. In other words, because the basis for the claims was independent of the rates set by FERC, a court would not have to "second-guess" a decision made by FERC. *Id.* at 915. An adjudication of the state law claims would therefore not require resolution of a substantial federal question. *Id.* at 919.

Here, as in *Central Iowa Power*, the state law claims do not challenge FERC's tariff rates. Likewise, the state law claims here do not challenge FERC's 2011 decision requiring Defendants to repay PJM. Rather, PJM's complaint simply asserts that Defendants have not met the payment provision of the PJM Operating Agreement. (D.I.11 at 11). While challenges to FERC's decision or tariff rates may arise as defenses to the state law claim, that fact will not defeat PJM's decision to bring its case in state court. *See Franchise Tax Bd.*, 463 U.S. at 10. Accordingly, PJM's claim does not raise a substantial federal issue. There is thus no concern about crossing the line, drawn by Congress, between state and federal judicial power. *See Grable*, 545 U.S. at 314.

An appropriate order will issue.

4